UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **EKABAL PAUL BUSARA** | : | **DOCKET NO. 2:21-cv-4055** |
| | | **SECTION P** |
| **VERSUS** | : | **JUDGE JAMES D. CAIN, JR.** |
| **UNITED STATES OF AMERICA** | : | **MAGISTRATE JUDGE KAY** |

**REPORT AND RECOMMENDATION**

Before the court is a Motion to Dismiss filed on October 12, 2022, pursuant to Rules 12(b)(1) of the Federal Rules of Civil Procedure by defendant, the United States of America. Doc. 21. This motion was filed in response to the complaint filed pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.*, by plaintiff Ekabal Paul Busara ("Busara"). Doc. 1. Busara file an Opposition to the defendant's motion on November 7, 2022 (doc. 26), and the government filed a reply on December 14, 2022 (doc. 27). The motion is now ripe for review.

These motions have been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636. For the following reasons, **IT IS RECOMMENDED** that the defendant's Motion for to Dismiss (doc. 21) be **GRANTED**.

# I.
## BACKGROUND

### A. Factual Background

Plaintiff, Ekabal Busara,, Reg. No. 40683-050, is a federal inmate serving a forty (40)-year sentence for kidnapping and conspiracy to commit kidnapping. *See* Public Information Inmate Data, doc. 21, att. 2, p. 2. Plaintiff has been in federal custody, including pretrial custody since March 5, 2003. *Id.* at p. 3.

It is undisputed that in March 2020, while incarcerated at the Federal Correctional Center in Oakdale, Louisiana (FCIO), plaintiff contracted COVID-19. *See* doc. 1; *see also* plaintiff's medical records, *in globo*, doc. 21, att. 14. He was admitted to the hospital on March 29, 2020, at which time he was intubated, placed him on a ventilator, and ultimately remained hospitalized until June 26, 2020. Doc. 21, att. 14. On July 31, 2020, he returned to the hospital due to complaints of chest pains. *Id*. After undergoing numerous tests, he was discharged, instructed to have follow up tests, to gradually resume normal activities, and to limit salt and cholesterol intake. *Id*.

The matter before this Court is brought pursuant to the Federal Tort Claims Act ("FTCA") case wherein the plaintiff alleges that he contracted COVID-19 because the warden failed to timely implement and/or follow safety guidelines recommended by the Federal Bureau of Prisons ("BOP"). Doc. 1. The Government avers that plaintiff's action should be dismissed because the discretionary function exception to the FTCA bars the suit and the Court therefore lacks subject matter jurisdiction.

### B. BOP and FCIO Covid-19 Safety and Prevention Protocols

In support of its motion to dismiss, the government submitted the Federal Bureau of Prisons ("BOP") and FCIO Covid-19 safety and prevention protocols, which set for the

following: Beginning in January 2020, the Federal Bureau of Prisons established a task force to begin strategic planning for COVID-19 procedures and to build on the existing framework pertaining to pandemics. *See* BOP COVID-19 Update Press Release, doc. 21, att. 3. On January 31, 2020, BOP recommended that all new inmates be screened for COVID risk factors and symptoms. *See* Guidance on 2019 Novel Coronavirus Infection for Inmate Screening and Management, *id*. at att. 4. The agency also provided a screening tool for use in accomplishing that initiative. *See* Coronavirus Inmate Screening Tool, *id*. at att. 5. BOP also recommended use of personal protective equipment ("PPE") for those staff members who came in close contact with individuals who had been officially diagnosed with COVID, or who might have been infected with the virus. *Id*.

On February 12, 2020, the Centers for Disease Control and Prevention ("CDC") discouraged the use of face masks by the general public, stating: "CDC does not currently recommend the use of face masks for the general public. This virus is not spreading in the community." *See* Transcript for CDC Telebriefing: CDC Update on Novel Coronavirus, dated February 12, 2020, https://www.cdc.gov/media/releases/2020/t0212-cdc-telebriefing-transcript.html.

Between February 24 and 27, 2020, the health services administrator at FCC Oakdale established procedures for screening new inmates for COVID, and provided the screening tool to all health services personnel. In a February 28, 2020 email memorandum, the warden further instructed prison staff to utilize the screening tool. *See* "Coronavirus Awareness" email dated February 28, 2020, *id*. at att. On February 29, 2020, BOP recommended screening of all newly arriving inmates and all staff with potential risk factors. *See* Guidance Update for Coronavirus Disease 2019 (COVID19), *id*. at att. 7.

On March 9, 2020, BOP issued guidance indicating that any staff returning from an "area of concern[1]" should fill out and submit the screening tool before being permitted to return to work. *See* Coronavirus Disease 2019 (COVID-19): Screening and Leave Guidance, *id*. at att. 8; *see also* Staff Screening Tool, *id* at att. 9.  On March 10, 2020, a staff member returned to work at FCI Oakdale without being screened after taking a trip to New York. However, BOP's guidance regarding screening of staff members returning from an area of concern did not apply at that time because New York was not added to the CDC Travel Advisory List until March 28, 2020.  *See* CDC Media Statement dated March 28, 2020, https://www.cdc.gov/media/releases/2020/s038-travel-advisory.html.

As of March 10, 2020, the CDC continued to discourage the wearing of masks by the general public in an effort to preserve the number of masks available to heath care workers. *See* Transcript of March 10, 2020 CDC Media Telebriefing: Update on COVID-19 which states, "In terms of masks, as you implied and I'll say, we really do not think this is the time for Americans to be going out and getting masks. Masks are really important for those at highest risk in the health care setting and we want to make sure that we save enough masks for our health care workers on the front lines who will need to continue to be able to do their work and take care of all of us."[2]

On March 13, 2020, former President Trump declared COVID-19 a National Emergency, and issued a travel ban restricting entry into the United States. *See* A Timeline of COVID-19 Developments in 2020.[3]   On that same date, the BOP suspended all internal movement (transfers between facilities) and instructed prison wardens to implement modified operations to maximize social distancing.  *See* BOP Coronavirus (COVID-19) Phase Two Action Plan, doc. 21, att. 10.

---

[1] Referencing https://wwwnc.cdc.gov/travel/notices
[2] https://www.cdc.gov/media/releases/2020/t0309-covid-19-update.html
[3] https://www.ajmc.com/view/a-timeline-of-covid19-developments-in-2020

However, this BOP directive also indicated that "programs should continue to be operated when feasible." *Id*. Any asymptomatic inmates with risk factors were to be quarantined, and symptomatic inmates were to be isolated. *Id*. BOP also called for enhanced staff screening in areas with "sustained community transmission." *Id*. As of March 13, 2020, no BOP inmates had tested positive for COVID-19. *Id*.

These BOP initiatives were echoed by a March 13, 2020 memorandum issued at FCC Oakdale regarding COVID-19 protective measures. *See* BOP Coronavirus (COVID-19) Protective Measures, id. at att. 11. The memorandum established the following measures, which were to be effective immediately:

1. Screening of inmates for COVID-19 as follows:
    a. All newly arriving inmates are screened for COVID-19 exposure risk factors and symptoms
    b. Asymptomatic inmates with exposure risk are quarantined c. Symptomatic inmates are isolated and tested for COVID-19
2. All social visits were suspended for 30 days
3. Inmate movement between facilities was suspended for 30 days
4. All legal visits were suspended for 30 days
5. All volunteer visits were suspended for 30 days
6. The prison was to "to limit inmate group contact, as much as possible."

The memorandum also noted that no inmates had tested positive to date. *Id*.

On March 18, 2020, BOP updated its action plan to provide that:

- All newly-arriving BOP inmates are to be screened for COVID-19 risk factors and symptoms
- Asymptomatic inmates with exposure risk factors are to be quarantined
- Symptomatic inmates with exposure risk factors are to be isolated and tested for COVID-19 per local health authority protocols
- To-date, no inmates have tested positive for COVID-19 in the BOP.

See Coronavirus (COVID-19) Phase Two Action Plan – Update #1, *id*. at att. 12.

Plaintiff alleges that on March 21, 2020, inmates from Eva housing unit were moved into his unit (Vernon) without first being tested. Doc. 1, p. 3, ¶ 5. However, as indicated above, the

BOP action plan in effect as of March 18, 2020, did not require testing of asymptomatic inmates. Doc. 21, att. 12, p. 4.  There was no mandate requiring the mass testing of the inmate population. Aligned with BOP's March 18, 2020, action plan, the Oakdale warden issued a memorandum to the inmate population outlining COVID-19 best practices.  *Id*. at att. 13.  The warden's memorandum, also dated March 18, 2020, offered the following tips for how inmates could protect themselves against contracting the virus:

> 1. Wash hands often with soap and water
> 2. If soap and water is not available, use hand sanitizer
> 3. Avoid touching your eyes, nose and mouth with unwashed hands
> 4. Social distancing
>    a. Avoid large groups or gatherings,
>    b. Cover your mouth and nose with a tissue when coughing or sneezing,
>    c. As much as possible, stay in your cell/cubicle and away from other people.
> 5. Clean and disinfect high touch areas often. 6. Keep your cell/cubicle area clean.

*Id*.

## II.
## LAW & ANALYSIS

### A. Legal Standards

#### 1. 12(b)1 Motion to Dismiss

A motion to dismiss for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1), may be treated as either a facial or factual challenge to the court's jurisdiction. *Williamson v. Tucker*, 645 F.2d 404, 412-13 (5th Cir. 1981) *cert. denied*, 102 S.Ct. 396 (1981). Facial attacks, which question the sufficiency of the pleadings, require the court to consider the allegations in the complaint as true. *See Spector v. L Q Motor Inns, Inc.,* 517 F.2d 278, 281 (5th Cir. 1975). During factual challenges to subject matter jurisdiction, courts are allowed to look outside of the pleadings and no presumptive truthfulness attaches to the allegations in the complaint.

*Williamson*, 645 F.2d at 413 (citing *Mortensen v. First Federal Savings and Loan Association*, 549 F.2d 844, 891 (3rd Cir. 1977)).

The district court has the ability to dismiss a complaint for lack of subject matter jurisdiction based on "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Williamson*, 645 F.2d at 413. If dismissal is sought for a jurisdictional defect that centers upon the lack of congressional waiver of the government's sovereign immunity, resolution is never appropriate byway of summary judgment, but must be resolved by way of a motion to dismiss for lack of subject matter jurisdiction. *Stanley v. Central Intelligence Agency*, 639 F.2d 1146, 1156-57 (5th Cir. 1981).

   2. *Discretionary Function Exception (DFE) to the FTCA*

The FTCA waives the sovereign immunity of the United States for damages caused by the negligence of federal employees under circumstances where private persons would be liable under state law. See 28 U.S.C. § 1346(b). This waiver, however, is limited by several exceptions enumerated at 28 U.S.C. § 2680. One of these is the discretionary function exception ("DFE"), which provides that immunity is not waived for "[a]ny claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). The discretionary function exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *United States v. S. A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines),* 104 S.Ct. 2755, 2762 (1984). This exception is designed to "prevent judicial 'second-guessing' of legislative and

administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Id*. at 2766.

In order for this Federal Tort Claims Act ("FTCA") claim to proceed, "[P]laintiff has the burden of stating a claim for a state-law tort and establishing that the discretionary function exception does not apply." *Spotts v. United States*, 613 F.3d 559, 569 (5th Cir. 2010), citing *St. Tammany Par. Ex rel. Davis v. Fed. Emergency Mgmt. Agency*, 556 F.3d 307, 215 (5th Cir. 2009). If the discretionary function exception (DFE) is found to apply, the FTCA claim must be dismissed for lack of subject-matter jurisdiction. *Cohen v. United States*, 151 F.3d 1338, 1341 (5th Cir. 1988).

Whether conduct is encompassed within the discretionary function exception is determined by applying a two-part test. *See Berkovitz v. United States*, 108 S.Ct. 1954, 1959 (1988). First, the challenged conduct must be discretionary – that is, the conduct "is a matter of choice for the acting employee." *Id.* The first inquiry focuses on the "nature of the challenged conduct," not the actor. *Id.* If the conduct is a matter of choice, then it is discretionary and comes within the exception. If, on the other hand, the conduct involves "a federal statute, regulation, or policy [that] specifically prescribes a course of action for an employee to follow," then the exception does not apply because "the employee has no rightful option but to adhere to the directive." *Id*. The mandatory and specific statute or regulation must be one that "creates clear duties incumbent upon government actors." *Kennewick Irrigation Dist. v. United States*, 880 F.2d 1018, 1026 (9th Cir. 1989).

Second, "assuming that the challenged conduct involves an element of judgment, a court must determine whether that judgment is of the kind that the discretionary function exception was designed to shield." *Berkovitz*, 486 U.S. at 1959. The exception protects discretionary

actions or decisions that are "based on considerations of public policy," i.e., decisions that are "grounded in social, economic and political policy." *Id*. at 537 (*citing United States v. S.A. Empresa De Viacao Aerea Rio Granense (Varig Airlines)*, 104 S.Ct. 2755, 2767 (1984). To establish the presence of policy considerations, the challenged actions must "be based on the purposes that the regulatory regime seeks to accomplish." *United States v. Gaubert*, 111 S.Ct. 1267, 1275 (1991). When the applicable statutes, regulations, or agency guidelines permit the exercise of discretion, "it must be presumed that the agent's acts are grounded in policy when exercising that discretion." *Id*. at 1274. The test is whether the decision is "susceptible" to policy considerations and "not whether the government actually considered each alternative in the universe of options." *Id*. at 1275.

### 3. *Application*

Plaintiff claims that BOP staff at FCIO failed to protect him by failing to implement procedures that he believes would have prevented him from being exposed to COVID-19.

Defendant argues that the discretionary function exception applies because the BOP's COVID-19 plans/policies and procedures and, therefore, the BOP officials' actions, involved judgments and choices about the appropriate response to COVID-19 that were discretionary and involved policy judgments.

As set forth above, the plaintiff bears the burden of demonstrating that the discretionary function exception does not apply to his claims. *See Spotts,* 613 F.3d at 569. Plaintiff's Opposition to the Motion to Dismiss references program statements to bolster his argument that the BOP has a general obligation to address workplace hazards and employee safety under OSHA standards. Doc. 26, pp. 2-4. The defendant counters, and this Court agrees, that these

statements are irrelevant, and the plaintiff has not cited to a single mandatory rule, or policy, that was supposedly violated by BOP, resulting in his damages.

In support of its motion, the defendant cites to numerous appellate and district courts which have held that the DFE applies to BOP decisions made in response to an alleged threat to the safety of an inmate. See, e.g., *Alfrey v. United States*, 276 F.3d 557 (9th Cir. 2002) (DFE applied to BOP response to cellmate's threat to kill inmate, where BOP searched the cell, but did not take any action to separate the inmates); *Dykstra v. United States*, 140 F.3d 791 (8th Cir. 1998) (DFE applied to BOP decision not to place inmate in protective custody despite plaintiff's complaint another inmate had been staring at him and that his youthful appearance made it more likely that he would be victim of sexual assault); *Calderon v. United States*, 923 F. Supp. 127 (N.D. Ill. 1996) aff'd 123 F.3d 947 (7th Cir. 1997) (DFE applied to BOP decision not to segregate inmate who was allegedly threatened by other inmate). There is no federal statute, regulation, or policy specifically prescribing a course of action regarding the protection of an inmate from other inmates that prison officials have no rightful option but to adhere to. See *Mitchell v. United States*, 149 F.Supp. 2d 1111 (D. Ariz. 1999); *see also Sears v. United States,* 2007 WL 527500, *6 (W.D. Wash. Feb. 14, 2007) (DFE applied where BOP employees failed to discover and prevent other inmates from entering the plaintiff's cell and beating him).

Defendant notes that courts have repeatedly held that the statutory and regulatory framework that mandates a duty to protect the safety of inmates does not preclude the application of the DFE. In particular, 18 U.S.C. § 4042 requires that the BOP "shall …provide for the safekeeping, care and subsistence of all persons charged with or convicted of offenses against the United States…." Although this provision has been construed by some courts to create a mandatory duty, it does not dictate a particular course of conduct to ensure the care of inmates.

Rather, the BOP retains broad discretion under section 4042 to determine how to safeguard prisoner's care. *See, e.g., Garza v. United States*, 161 Fed.Appx. 341, 343 (5th Cir. 2005)("We join our sister circuits in recognizing that neither section 4042's mandate to protect prisoners nor the Eighth Amendment's prohibition against cruel and unusual punishment define a non-discretionary course of action specific enough to render the discretionary function exception inapplicable."); *Cohen v. United States,* 151 F.3d 1338, 1342 (11th Cir. 1998) ("[E]ven if § 4042 imposes a general duty of care to safeguard prisoners, the BOP retains sufficient discretion in the means it may use to fulfill that duty to trigger the [DFE]."); *Calderon*, 123 F.3d 947; *Huff v. Neal*, 555 Fed.Appx. 289, 298 (5th Cir. 2014). Section 4042 reaffirms the discretionary nature of the BOP decisions regarding how to provide for inmate safety.

Although the Fifth Circuit has not directly addressed whether the DFE should apply to actions taken in response to the COVID-19 pandemic, the defendant cites to jurisprudence from other courts that have adjudicated the issue have all found that the DFE precludes liability on the part of the United States for failing to prevent COVID-19 infections. *See, e.g., Kling v. World Health Organization,* 532 F. Supp.3d 141 (S.D.N.Y. 2021)(finding the World Health Organization could not be sued under the International Organization Immunities Act due to the discretionary acts exception, as "the WHO's decisions regarding its handling of COVID-19 involved policy judgments."); *see also Santiago v. United States*, 2022 WL 790805 (W.D. Virginia Mar. 14, 2022)(finding claim that prison officials failed to ensure social distancing and mask wearing and did not provide sufficient cleaning supplies was precluded by the DFE).

In *Sanford v. United States*, 2022 WL 1210717, *3 (D. S.C. Apr. 25, 2022), cited by both parties, the Court found that a prison warden's failure to use reasonable care when [he] neglected to protect plaintiff from contracting COVID-19," specifically the "negligent failure to follow

certain statutes, CDC guidelines…" was precluded by the DFE. However, that court allowed further factual development as to whether and BOP COVID-19 procedures were mandatory or discretionary. Plaintiff cites the *Sanford* case for the proposition that discovery was allowed prior to a ruling by the court regarding whether internal BOP memoranda were mandatory. However, as noted by the defendant, *Sanford* can be distinguished from the instant case in that regard. The *Sanford* Court reviewed the BOP Phase Eight and Phase Nine plans, not the Phase Two plan at issue in the instant suit. Also, in *Sanford* the Government did not initially introduce the pertinent BOP memoranda into evidence. Here, the original and updated Phase Two plans made subject of the plaintiff's suit, in addition to other related BOP documents were attached to the pending Motion to Dismiss. *See* doc. 21, atts. 3-12.

Moreover, the Magistrate Judge in the *Sanford* case recently issued a Finding and Recommendation:

> Sanford bears the burden of demonstrating that the discretionary function exception does not apply to his claims. *See Blanco Ayala*, 982 F.3d at 214. Despite having availed himself of the opportunity to conduct discovery on this issue, Sanford fails to identify any evidence that shows that the BOP's COVID-19 policies and procedures were mandatory. As the court found in its previous Report and Recommendation, the memoranda and policies cited by Sanford do not establish whether the protective measures described within them are mandatory policies, mere guidance, or something else. The memoranda describe themselves as "guidance," "general principles," or "recommended approaches." (Pl.'s Mot. Summ. J., ECF Nos. 83-5 at 6, 8, 10-11; 83-6 at 17; Def.'s Mot. Summ. J. Ex. C, ECF No. 85 at 15.) On the other hand, the policies also use mandatory language to describe the guidance, principles, or approaches. (See, e.g., Pl.'s Mot. Summ. J. Ex. J., ECF No. 83-9 at 112) (stating that all BOP institutions "will begin testing all new admissions/intakes for COVID-19"). But Sanford does not present any evidence that would show that these memoranda or policies amounted to official policy that "prescribes a course of action for an employee to follow." *Gaubert*, 499 U.S. at 322. The only evidence in the record is the memoranda and policies themselves, which are ambiguous and provide no context for the court to determine whether they amounted to a mandate or just guidance. Therefore, Sanford fails to show the BOP officials' actions were not

> discretionary and did not involve an element of judgment or choice based on considerations of public policy. *Id.*

*Sanford v. United States*, 0:21-cv-2552-RMG-PJG (D. S.C. Oct. 18, 2022), rec. doc. 97 at pp. 6-7.

Thus, even after gathering discovery, the plaintiff in *Sanford* was unable to establish that the COVID procedures at issue in that case were mandatory. In the instant case, the Court finds that the Government has provided the evidence and information necessary for it to conclude that the COVID-19 memoranda gave the Oakdale Warden discretion to implement the safety protocols scrutinized by the plaintiff.

In *Wallace v. United States Department of Justice, et al,* 21:3035 (E.D. N.C., Jan. 27, 2021), relied upon by the defendant, the Eastern District of North Carolina dismissed the plaintiff's COVID-related FTCA claim, stating that "28 USC 2680(f) immunizes the Government from suit for damages proximately caused by the decision whether to impose a quarantine and any actions undertaken by the Government to carry out the purposes of the quarantine. The Government retains this immunity even if it acts negligently in carrying out the quarantine." There can be no doubt that the decisions made and actions carried out by CDC and BOP in response to the COVID-19 pandemic were the type that Congress intended to protect under the DFE: "the CDC's 2019 statements on measures such as social distancing, mask wearing and quarantining… are advisory and do not mandate any particular conduct by the BOP…." *Sanford*, 2022 WL 1210717 at *3. Furthermore, as the court found in *Santiago*:

> BOP's handling of COVID-19 and the protective measures it put into place involved an element of judgment or choice. Santiago has pointed to no statute, regulation, or policy that was binding on BOP or USP Lee officials…. Second, the development and implementation of safety protocols in federal prisons is unquestionably based on considerations of public policy. Federal prisons have limited space and resources, so social distancing is not always possible…. The BOP must balance its duty to

>> protect inmates from COVID-19 with its duty to protect inmates from each other, to safeguard staff, and to protect the public.

2022 WL 790805 at *2-3. "Prison administrators… should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Id.*, *quoting Whitley v. Albers*, 475 U.S. 312, 321-22 (1986).

The undersigned has reviewed the voluminous evidence submitted, including the policies and memorandums. They include descriptive terms indicating guidance, recommendations, general principles, and recommended approaches, but they do contain mandatory language to describe the guidance, recommendations, principals, and approaches. *See Hatten v. United States*, 2023 U.S. Dist. LEXIS 44856 (D. S.C. Jan. 24, 2023). Here, the plaintiff has not presented evidence that would show that the memoranda or policies amounted to official policy that "[p]rescribes a course of action for an employee to follow." See *Gaubert*, 111 S.Ct. at 1273. As held by the *Sanford*, *supra*, court: "the evidence regarding the BOP's COVID-19 policies does not suggest there was a mandatory course of action to be followed. And Plaintiff does not provide or point to any additional information in his objection. Thus, Plaintiff's negligence claim based on the BOP's alleged failure to follow its own COVID-19 protocols is barred by the discretionary function exception." *See also, Santiago v. United States*, 2022 WL 790805, at *3 (. . .the development and implementation of safety protocols in federal prisons is unquestionably based on considerations of public policy. Federal prisons have limited space and resources, so social distancing is not always possible. . . hand sanitizer can pose their own safety concerns, as they can be used by inmates as weapons or drugs. The BOP must balance its duty to protect inmates from COVID-19 with its duty to protect inmates from each other, to safeguard staff, and to protect the public. "Prison administrators ... should be accorded wide-ranging deference in the

adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security.") (internal citations omitted).

The difficult task of responding to a global pandemic is precisely the type of scenario "grounded in social, economic, and political policy" that Congress intended to immunize from "judicial second-guessing…through the medium of an action in tort." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 814 (1984). Plaintiff has failed to meet his burden and therefore, his negligence claim based on the BOP's failure to follow its own COVID-19 protocol is barred by the discretionary function exception and defendant's Motion to Dismiss for lack of jurisdiction should be granted.

### III.
#### CONCLUSION

For the foregoing reasons,

**IT IS RECOMMENDED** that the defendant's Motion to Dismiss (doc. 21) be **GRANTED** and that the action be **DISMISSED WITH PREJUDICE.**

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file written objections with the Clerk of Court. Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days of receipt shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

THUS DONE AND SIGNED in Chambers this 27th day of April, 2023.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE